# Staunton.

## CORA A. DERMOTT v. EVA B. CARTER.

September 20, 1928.

The opinion states the case.

*H. C. Tyler* and *John B. Spiers*, for the appellant.

*Jordan, Roop, Sowder & Dalton*, for the appellee.

HOLT, J., delivered the opinion of the court.

This suit was instituted in April, 1926. The plaintiff (defendant in error) in her bill charges that the defendant (plaintiff in error) is indebted to her in various sums, secured by four deeds of trust:

1. One of date September 3, 1921, to secure the payment of $1,500.00;

2. One of date September 30, 1921, to secure the payment of $4,000.00;

3. One of date July 23, 1923, to secure the payment of $1,500.00;

4. One of date November 26, 1923, to secure the payment of $700.00.

All of these trust deeds conveyed a one-third undivided interest in a certain hotel property in the city of Radford. By decree of May 11, 1926, the cause was referred to a master commissioner, with directions to report what was the actual balance due on these several debts. The commissioner filed his report on September 24, 1926. To it sundry exceptions were taken both by the plaintiff and by the defendant. Some of these exceptions were overruled and the cause was recommitted to the master to consider and report upon others. This he did and his second report was filed March 30, 1927. That report shows that there was unpaid on account of trust deed No. 1, $1,367.96, and on account of trust deed No. 2, $4,788.22, the total unpaid balance being $6,157.98.

Immediately after this second report was returned certain omissions were noted by counsel for the plaintiff, and at their request what is styled in the record "Addenda to Supplemental Report Filed March 30, 1927," was filed. This "Addenda" shows unpaid taxes on this one-third interest, in amount of $132.56, a judgment in favor of John Max for $339.69, another in favor of A. Simon for $1,238.07, and that the notes evidencing the debts in the several deeds of trust had been properly reported for taxation in Giles county where the plaintiff lived. To this report also exceptions were taken. It, with its "Addenda," was confirmed by decree of April 28, 1927, and R. L. Jordan, trustee named in these deeds, was directed to sell in the

event the debts secured were not paid. He was also ordered to execute a bond in the penalty of $8,000.00, conditioned for the faithful performance of his duty, and to report his proceedings to the court.

The first assignment of error is based upon this exception: "Mrs. Cora A. Dermott, by counsel, makes the following exception to the addenda to the supplemental report of J. A. Painter, commissioner, which addenda was filed in this cause on the 20th day of April, 1927.

"The commissioner secured the information upon which he based his addenda to his supplemental report without notice to the defendant, Cora A. Dermott, in person, or to her attorneys, in the absence of and without the knowledge of the said Cora A. Dermott or her attorneys, either as to securing the information on which the addenda is based or as to the filing of the said addenda."

It was urged in argument, though not stated in the exception, that the commissioner, after his second report had been filed, had no authority to act at all—that he then became and was *functus officio*. This is true but it is common practice in this State for counsel and commissioners informally to call to the court's attention liens of record inadvertently omitted. That these were valid liens is not denied, and we can see no wrong done to the plaintiff in directing the court's attention to them.

It is also true that under section 6185 of the Code it was the commissioner's duty to return with his report all of the evidence on which it was based. The statute so provides. When a commissioner fails in this any party in interest may ask that the court order its production. Unless this is done, it cannot be assigned as ground of error. 5 Va., Law Reg. (N. S.) 601, and *Felton* v. *Felton*, 47 W. Va. 27, 34 S. E. 753. No such

request was made and there is no evidence in the record to show upon what the commissioner based his findings.

In the tax bill of 1926, Acts of Assembly 1926, page 978, it is provided that "in every action at law or suit in equity in a court of record for the collection of any bonds, notes or other evidences of debt, the plaintiff shall be required to allege in his pleadings or to prove at any time before final judgment is entered, (1) that such bonds, notes or other evidences of debt have been reported for taxation and assessed for each and every tax year on the first day of which he was the owner of same, not exceeding three years prior to that in which the suit or action is brought. * * * And no judgment or decree of a court of record shall be valid unless the allegation herein required was made, or unless proof was adduced of the same before final judgment was entered."

This statute and its history is reviewed in detail in *Farant* v. *Beale*, 148 Va. 494, 139 S. E. 284.

If it were necessary, payment of this tax could still be shown. There has been no final judgment. The trustee must report his sales for confirmation or rejection, and until that is done it is still permissible to show the facts. *Dellinger* v. *Foltz*, 93 Va. 732, 25 S. E. 998, and *Lee* v. *Lee*, 142 Va. 250, 128 S. E. 524. Payment of taxes is a matter of importance, and if nonpayment were charged, the issue so made would demand painstaking examination. There is no such charge. The burden of this assignment is irregularity in the production of proof, and not non-payment as a fact. The trial court was satisfied, and we are willing to adopt its judgment. There is no merit in this assignment of error.

It is next said that the court erred in appointing R. L. Jordan, trustee, to make sale of the property instead of appointing one or more court commissioners. The court directed Jordan, trustee, to sell. It required him to give bond and to report his proceedings to the court. This made the sale a judicial one. *Sproul* v. *Hunter*, 122 Va. 102, 94 S. E. 179. The court took full charge and it is a matter of small moment whether Jordan be styled trustee or court commissioner. His compensation had already been determined, the sum allowed or to be allowed being that given court commissioners under the statute. Acts of Assembly 1926, page 594.

In *New York L. Ins. Co.* v. *Kennedy*, 146 Va. 197, 207, 135 S. E. 882, 885, the court said: "While the terms of the trust deed are matters of contract, the medium provided for the execution of the same may be a matter within the discretion of a court of equity. This discretion a court of equity has exercised in the instant case. Unless this discretion has been abused, this court will not interfere.

"Unless there is some good reason for the court not doing so, we believe the general practice is for the court either to appoint the trustee the sole commissioner to make the sale, or else to unite one or more commissioners with him, all of whom are then governed by the equitable and statutory rules governing sales made by commissioners of the court."

There is no merit in this assignment.

It is next said that the court allowed seventeen and one-half per cent attorneys' fees and sale commissions, and that any such allowance is excessive. The facts do not sustain this exception. Sales commissions allowed or to be allowed, as we have seen, are those fixed by statute, and the trial court has so decreed.

The notes evidencing this indebtedness provided for an attorney's fee of fifteen per cent, except in one instance where a $350.00 note called for a ten per cent fee. The master was of opinion that this was excessive. This view was adopted by the court which fixed the commission at seven and one-half per cent. This was a matter for the exercise of sound discretion, and this discretion has not been abused. *Conway* v. *Am. Natl. Bank*, 146 Va. 357, 131 S. E. 803.

 It is next said that the court erred in holding that there was anything due under the trust deed of September 30, 1921, when this suit was instituted, because it is there provided that the debt secured should not become due and payable until two years after the completion of the hotel building, and that this building had not in fact been completed two years before this suit was brought, and has indeed never been completed.

 The commissioner saw the witnesses, heard them testify, and examined the building himself. In such circumstances the weight to be given to his report has been established by a long line of decisions. It is said, however, that these no longer apply because section 6179 of the Code of 1919 declares that "the report shall not have the weight given to the verdict of a jury on conflicting evidence, but the court shall confirm or reject such report in whole or in part according to the view which it entertains of the law and the evidence."

In *American Surety Co.* v. *Hannah*, 143 Va. 291, 130 S. E. 411, Judge Campbell, speaking for the court, said this is still law:

"In *Ingram* v. *Ingram*, 130 Va. 329, 107 S. E. 653, 26 A. L. R. 1175, Prentis, J., said: 'It is sufficient to say that we agree with the conclusion of the commissioner and of the trial court, and that even if we had

any fair doubt as to their correctness, we would affirm the decree and follow the familiar rule, so often emphasized, that the report of a commissioner, when the evidence has been taken in his presence, is entitled to great weight and should not be disturbed unless its conclusions are clearly unsupported by the evidence, and such a report on the value of property based upon conflicting testimony and sustained by the trial court will not be overruled on appeal. *Cottrell* v. *Mathews*, 120 Va. 847, 92 S. E. 808; *Va. Lumber & Extract Co.* v. *O. D. McHenry Lumber Co.*, 122 Va. 111, 94 S. E. 173.' "

The commissioner's report, so far as pertinent, is: "Your commissioner also made a physical examination of the building, the rear walls of which are erected of concrete blocks. He found the rear wall of the original or main building, the partition wall now between the main building and the annex, is built up to the roof of concrete blocks, with windows in said wall which is now the dividing wall between the rooms in the main building and annex, also there are doors in the hallways leading from main to annex, and the floors in the halls on the second and third floors in the main building and annex are not on the same level with the floors in the annex, which plainly indicates that the main building was completed as set out in the original plan, and the annex was later erected independent, but as a annex, and joined to the main building which is clearly shown by the proof."

 C. F. Davis, one of the owners, said that it was completed on September 15, 1922. Plaintiff testified that it was completed, and the defendant herself leased it from her co-owners on September 20, 1920, for a term of two years, at a rental of $225.00 a month. Mrs. Dermott on several occasions wrote to Mr. Carter,

asking him not to foreclose, and said that she wanted more time, and when asked to explain this in view of her present position, answered that it was "just a crazy woman's ways." On recross-examination, she said that this had reference only to the first or $1,500.00 deed of trust.

There was evidence, particularly that of Mrs. Mabel Merchant and of the defendant herself, tending to show that the building was and is not completed. A careful examination of the record leads us to believe that this conflict arises out of the fact that there is an addition to this hotel still unfinished, but that this addition was not a part of the building as originally planned, and, so far as the plaintiff's right to foreclose is concerned, need never be completed.

The deed did not say who should make the marginal entries called for by it. They were made by Mr. Davis, one of the owners, who was, in a large degree, superintendent of the construction. He was well qualified to make them, and we see no objection to anything that he did.

This suit was not prematurely brought, nor has anything been done to mislead the defendant. She knew every fact, and particularly did she know that the building was completed for she went into possession September 20, 1922, and she knew that foreclosure proceedings might be brought at any time after two years from that date. Mrs. Carter had not been an importunate creditor, and was well within her rights when she appealed to the court for assistance.

The last assignment of error rests on these facts: When the note for $1,500.00, secured in the first deed of trust, was given, there was actually paid only $1,455.00, $45.00 less than the face of the note. The note itself bears interest from date. Mrs. Carter's

evidence is that all of the notes were taken by her husband, Mr. Carter, and were with his papers at his death, and that she had no idea at all that anything but six per cent was to be charged. On direct examination, Mrs. Dermott said:

"Q. Mrs. Dermott, the bill alleges that on September 3, 1921, you executed a note for $1,500.00 payable to Mrs. Eva V. Carter, securing deed of trust, conveying the hotel property to R. L. Jordan, trustee; I want to ask you if you executed a note to Mr. Carter for $1,500.00 at that time?

"A. I think Mr. Carter took out at least six months interest of the $1,500.00, but I got the rest of the $1,500.00, except the interest, for a period of time, I think, one-half a year."

██ ██ Proof of usury must be clear and satisfactory (*Ruckdeschall* v. *Siebel*, 126 Va. 359, 101 S. E. 425), and it is not usurious for a private individual to discount commercial paper, and deduct the interest at the time of discount. *Parker* v. *Cousins*, 2 Gratt. (43 Va.) 372, 44 Am. Dec. 388. It helps us to understand what the parties had in mind when this note was executed, if we remember that the sum reserved was exactly six per cent interest for six months on the loan made. Looking at the substance of things, we believe that it was fairly the intention of the parties to pay six months interest in advance. Mrs. Dermott herself testifies in terms that that was what was done. If this be true, and we think it was, there was no usury.

The record, in some respects, is not as clear as it might be, but upon the whole we are of opinion that no reversible error has been committed, and that the decree appealed from should be affirmed. It is so ordered.

*Affirmed.*