## No. 18,505.

ROCK WOOL INSULATING COMPANY *v*. C. C. HUSTON.

(346 P. [2d] 576)

Decided November 16, 1959.   Rehearing denied December 7, 1959.

14

Messrs. SEAVY & SEAVY, for plaintiff in error.

Mr. WYNN M. BENNETT, JR., for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DOYLE.

PLAINTIFF in error was the defendant in the trial court. An action was there instituted by Huston, defendant in error here, on a promissory note executed February 9, 1951, in the amount of $6,000.00 plus interest at the rate of 5% per annum, together with attorney's fees in the amount of 15%. The case was tried to the court and judgment was entered in favor of the plaintiff. Defendant now seeks review and reversal by writ of error.

One A. E. Reilly was at the time of the execution of the note in suit President and General Manager of the defendant corporation. Reilly and other officers and employees of defendant testified at the trial and from this testimony and that of the plaintiff, it would appear that Reilly, on behalf of the defendant company approached plaintiff for the purpose of borrowing $5,000.00. It was represented to the plaintiff that this money was to be used to pay particular company expense, including discharge of a company indebtedness to Freuhauf Trailer Co. Reilly also signed the note individually. It was made in the amount of $6,000.00 because plaintiff had previously loaned Reilly $1,000.00. The note was intended to evidence this prior indebtedness, together with the company indebtedness resulting from the $5,000.00 loan. The signature was "Rock Wool Insulating Company by A. E. Reilly, President, and A. E. Reilly as an individual."

The $5,000.00 was delivered to Reilly in cash and was deposited by him in his personal account in a Pueblo bank. Cancelled checks offered at the trial evidenced the fact that Reilly had paid out sums exceeding the

$5,000.00 for the benefit of the company at or about the same time, including payments to Freuhauf Trailer Company aggregating $3,626.77.

D. K. Wolfe, Jr., a Denver attorney, testified that during the times in question he was a director of defendand company and that Reilly was fully authorized by the directors to act for the company and to borrow money, and that he did borrow money on many occasions. Wolfe said that the board customarily approved all of Reilly's transactions, and further testified that the loan here in question was not, to his knowledge, reported to the board of directors. However, the then Secretary-Treasurer of the company testified that Reilly had full authority to borrow money and that the minutes reflect numerous borrowing authorizations. She further stated that she was familiar with the $5,000.00 loan transaction.

Anthony E. Reilly testified that he had a blanket authority to borrow money on behalf of the company, and that though there was no specific authorization to negotiate the loan in question, he did report it to the board of directors immediately after its completion. The corporate minutes reflected an express borrowing authorization in the amount of $15,000.00. This was entered in 1947 and was never revoked.

On behalf of the defendant, it was shown that the books of the corporation did not reflect the $5,000.00 transaction here in issue, although showing an account payable to Reilly in that amount. Defendant maintains that this, together with the fact that the money loaned was deposited to Reilly's personal account, and the further fact that the note covered a $1,000.00 personal loan as well as the $5,000.00, served to establish that the entire transaction was a personal one between plaintiff and Reilly. It also appeared that all of plaintiff's demands for payment were made to Reilly personally.

The $1,000.00 personal loan was shown to have been paid by Reilly and the judgment of the trial court recog-

nized this, being in favor of the plaintiff against the defendant in the amount of $5,000.00, together with interest plus an attorney's fee amounting to $750.00.

The points relied on by defendant for reversal include the following:

1. That the facts and circumstances adduced at the trial establish that the transaction was a personal loan and not a company transaction.

2. That there was a lack of authority in writing to negotiate the transaction in question.

3. That the court erred in awarding attorney's fees; that the evidence was insufficient to warrant recovery.

■ *First,* Although the evidence is somewhat conflicting, there is testimony in the record to support plaintiff's theory that the obligation was that of the company. We cannot agree with the contention of the defendant that the evidence established beyond dispute that the loan in question was made to Reilly and not to the company. The fact that it was executed on behalf of the company; that its proceeds were shown to have been used at least in part for the discharge of company obligations, support the trial court's conclusion that the transaction was in fact a company one. That the money was deposited to the account of Reilly and did not appear on the company books as such, is consistent with the loose, informal and unbusinesslike way that the company operated during the Reilly regime.

■ *Second,* The record also supports the trial court's conclusion that Reilly had actual authority to borrow money and to execute notes on behalf of the company. The express authorization contained in the minutes, together with the testimony of the other witnesses that Reilly regularly negotiated loans on behalf of the company with the knowledge and approval of the board, amply supports the ruling that such authority existed in fact. We recognize the principle of law here invoked, namely, that "unless otherwise agreed an agent is not authorized to borrow unless such borrowing is usually

incident to the performance of acts which he is authorized to perform for the principal." *Restatement of the Law of Agency,* Sec. 74. See also *Montrose Land and Investment Co. v. Greeley National Bank,* 78 Colo. 240, 241 P. 527. In the *Montrose* case neither the by-laws nor the minutes of the corporation contained an express authorization to borrow money and the Court held that the authority to manage the company and control its affairs did not *ipso facto* carry with it the power .to borrow money or make notes. The Court, speaking through Mr. Justice Denison, said:

" * * * A general agent to carry on business, has not, ipso facto, power to borrow money or issue paper. *Sanford Cattle Co. v. Williams,* 18 Colo. App. 378, 381, 71 Pac. 889; *Schramm v. Liebenberg,* supra; *Ruedy v. Alamosa Nat. Bank,* 77 Colo. 112, 235 Pac. 350; *Rizzuto v. R. W. English Lumber Co.,* 44 Colo. 413, 98 Pac. 728, unless such action is a necessary incident to the business of the principal. The land and investment business carries no such incident. Every lawyer knows that corporations in such business act by their board of directors in such matters; the by-laws of this company had so provided, the financing of the company had all been provided for through the Holly Sugar Company and Hoffman had never, so far as the record shows, executed any promissory notes without the board's authority except these two. The conduct of a principal tacitly conceding powers to an agent works in two ways, as evidence tending to show actual authority and by way of estoppel, i.e., by misleading some one to believe that there was no actual authority and the bank was not misled because the cashier Neill was a director and one of the original organizers of the Montrose company, knew of the arrangement that had been made for supplying that company with funds, and that it stood in no need of money, and had no reason to believe that Hoffman had authority. The bank knew only through Neill, so it was not misled. * * * "

■ In the case before us it is not only the factor of one-man operation, but also the grant of actual power reflected in the testimony which persuades us that actual authority existed. It is to be noted that authority to borrow money does include authority "to execute in the name of the principal such evidences of debt as are usually given." Restatement, supra, Sec. 75. Thus Reilly, having authority to borrow money on behalf of the company, was also empowered to execute evidence of the indebtedness, in this instance the note.

■ *Third*, Plaintiff failed to offer any evidence in support of its claim for an attorney's fee and now argues that the trial court was in a position to determine its reasonableness from the general evidence before it, such as the length of the trial. We do not agree with this contention. The plaintiff was entitled to recover attorneys' fees only upon a showing that such fees had been paid or incurred and were reasonable. This rule has been applied repeatedly. See *Jones v. First National Bank of Ft. Collins*, 74 Colo. 140, 219 Pac. 780 and *Denver Lumber and Mfg. Co. v. Capitol Life Insurance Co.*, 96 Colo. 21, 39 P. (2d) 1036. In the *Jones* case, wherein the note provided for a 10% attorneys' fee, it was said:

" * * * It is claimed that the fee was not reasonable. On the record before us it would seem very large, but the return expressly admits the reasonableness of the fee. If there is a bona fide claim that it was not reasonable the return should be amended, or an answer filed to that effect.

"The petition alleged and the return denied that the bank had incurred a liability for the fee. This was a material issue, because, in this state, a provision for an attorney's fee in a note is regarded as to protect and indemnify the holder and not to enrich him, and he can recover only what he had paid or obliged himself to pay, and such payment or obligation must be actual, bona fide and reasonable. *Florence Co. v. Hiawatha Co.*, 55

Colo. 378, 382, 135 Pac. 454. The demurrer to the return was therefore improperly sustained. * * * "

In the case at bar no evidence was offered to show that the fee claimed was reasonable or that the plaintiff had either paid or incurred it, and since it is recoverable only on the basis of indemnification, we are constrained to hold that the evidence is insufficient to support a judgment therefor.

Accordingly the judgment is affirmed in part, reversed in part and remanded with directions to the trial court to deduct from the total recovery the amount allowed for attorneys' fees and to enter judgment in favor of the plaintiff Huston for the balance.

MR. JUSTICE HALL and MR. JUSTICE MOORE concur.